## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JAMES LAMONT BROWN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION |
| v. ) | |
| ) | No. 11-1099-JWL |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security

(hereinafter Commissioner) denying disability insurance benefits (DIB) and supplemental

security income (SSI) under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social

Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act).

Finding no error, the court ORDERS that judgment shall be entered pursuant to the fourth

sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.      Background

Plaintiff applied for both DIB and SSI on July 3, 2007, alleging disability

beginning January 1, 2005.  (R. 103-15, 362).  The applications were denied initially and

upon reconsideration, and Plaintiff requested a hearing before an Administrative Law

Judge (ALJ).  (R. 33-36, 46-47, 362).  Plaintiff's request was granted, and Plaintiff appeared with counsel for a hearing before ALJ Michael R. Dayton on December 22, 2008.  (R. 7-8, 362).  At the hearing, testimony was taken from Plaintiff and from a vocational expert.  (R. 7-32, 362).  On February 19, 2009 ALJ Dayton issued a decision in which he found that Plaintiff has a severe combination of mental impairments but is able to perform a full range of work at all exertional levels restricted only by certain non-exertional limitations related to his mental impairments.  (R. 362-370).  The ALJ determined at step four that Plaintiff is able to perform his past relevant work as a materiel handler or as a hand trimmer.  (R. 369).  Alternatively, the ALJ determined at step five that although the unskilled job base is reduced by seventy-five percent for an individual with limitations such as those assessed for Plaintiff, there are other jobs existing in the economy in significant numbers that Plaintiff can perform.  (R. 369-70).  Therefore, the ALJ determined Plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 370).

Plaintiff sought Appeals Council review of the ALJ's decision.  (R. 5-6).  The Appeals Council found no reason to review the decision, and denied Plaintiff's request for review.  (R. 1).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 1); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.  (Doc. 1).

## II.    Legal Standard

The court's jurisdiction and review are guided by the Act.  Weinberger v. Salfi, 422 U.S. 749, 763 (1975) (citing 42 U.S.C. § 405(g)); Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009) (same); Brandtner v. Dep't of Health and Human Servs., 150 F.3d 1306, 1307 (10th Cir. 1998) (sole jurisdictional basis in social security cases is 42 U.S.C. § 405(g)).  Section 405(g) of the Act provides for review of a final decision of the Commissioner made after a hearing in which the Plaintiff was a party.  It also provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is such evidence as a reasonable mind might accept to support a conclusion.  Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  Whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not

substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

      An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least twelve months.  <u>Thompson v. Sullivan</u>, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)); <u>see also</u>, <u>Knipe v. Heckler</u>, 755 F.2d 141, 145 (10th Cir. 1985) (quoting identical definitions of a disabled individual from both 42 U.S.C. §§ 423(d)(1) and 1382c(a)(3)(A));  <u>accord</u>, <u>Lax</u>, 489 F.3d at 1084 (citing 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A)).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

      The Commissioner uses a five-step sequential process to evaluate disability.  20 C.F.R. §§ 404.1520, 416.920 (2008); <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  <u>Wilson</u>, 602 F.3d at 1139 (quoting <u>Lax</u>, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether he

4

has a severe impairment(s), and whether the severity of his impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's RFC.  20 C.F.R. §§ 404.1520(e), 416.920(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the sequential process-- determining whether claimant can perform past relevant work; and whether, considering vocational factors of age, education, and work experience, claimant is able to perform other work in the economy.  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Blea, 466 F.3d at 907; accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy within Plaintiff's capability.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff points to his testimony at the hearing regarding his allegedly extreme limitations both in daily living and in his withdrawal from social activities (Pl. Br. 13), and argues that the limitations to which he testified "have been under rated and mischaracterized as of mild limitation purely in order to anchor a faulted decision."  Id. at 14.  He argues that the extreme severity of the paragraph B criteria in activities of daily living and in social functioning "are not properly reflected in the mental residual

5

functional capacity assessment recommendation provided by the administrative law judge." (Pl. Br. 14). Plaintiff asserts "that a true consideration of the extreme limitations in restrictions of daily activities and difficulties in social functioning articulate extreme limitations when objectively considered away from the biased lens of a predisposition of denial imagined and projected by DDS and re-articulated by the ALJ." Id. at 12-13. The court understands Plaintiff's brief to allege three errors in the decision at issue: (1) The agency and the ALJ were biased and predisposed to deny benefits without proper consideration of the record. (2) The ALJ improperly applied the Commissioner's psychiatric review technique. And (3) the ALJ erroneously determined that Plaintiff's allegations of symptoms resulting from his impairments are not credible. In his brief, the Commissioner argues that substantial evidence supports the ALJ's credibility determination, and that the vocational expert's testimony is substantial evidence supporting the finding that there are a significant number of jobs in the economy that Plaintiff can perform. (Comm'r Br. 8-14). In Plaintiff's reply brief (entitled "Plaintiff's Response Brief"),[1] he objects to the Commissioner's citation to the case of Bean v.

---

[1]D. Kan. Rule 83.7.1 controls in this court's review of administrative proceedings. The party seeking review (Plaintiff) shall file a brief within forty-five days after the agency files the administrative record in the case, and the responding party (the Commissioner) shall file a brief within thirty days thereafter. D. Kan. Rule 83.7.1(d). The rule provides that the party seeking review "may serve and file a reply brief within 14 days after service of the brief of the respondent." Id. (emphasis added). "Plaintiff's Response Brief" fits the local rule's allowance of a reply brief. In consideration of the local rule, the court's CM/ECF system for electronic filing provides a means whereby the parties may file their required brief's within that system. The party seeking to file a

<u>Chater</u>, 77 F.3d 1210, 1213 (10th Cir. 1995) for the proposition that "[t]he Tenth Circuit has held that similar activities [(to activities of daily living performed by Plaintiff)] are inconsistent with allegations of disabling limitations." (Reply, 1-2) (quoting (Comm'r. Br. 10-11) and citing <u>Bean</u>). He argues that <u>Bean</u> does not stand for the proposition that the mere performance of such activities is inconsistent with disability, and that although such activities may be considered in evaluating credibility, they do not automatically preclude a finding of disability. <u>Id.</u> 2-3. Finally, Plaintiff asks the court to consider Plaintiff's hearing testimony as summarized in his Initial Brief, and argues that "[t]he ALJ has undervalued the 'B Criteria' limitations" regarding activities of daily living and social functioning when assessing Plaintiff's RFC. (Reply 3-4).

III.    **Analysis**

Although Plaintiff alleges bias, erroneous application of the psychiatric review technique, and erroneous evaluation of the credibility of his allegations of symptoms, he does not point to record evidence or statements in the decision which demonstrate bias or the other errors alleged. He merely asserts bias and a predisposition to denial, and argues

———————————

Social Security brief in the system may sequentially hover his cursor over "Civil" in the CM/ECF menu bar; hover over "Motions, Supporting Documents, Responses, Replies & Social Security" in the dropdown menu that appears; and select "Responses, Replies & Social Security" in the final menu that appears. When the next web page downloads, the party may begin typing "Social Security" in the blank space at the top of the page, and four Social Security events will appear in the box below. From those events, the party may select "Commissioner's Response Brief," "Plaintiff's Initial Brief," "Plaintiff's Reply Brief," or "Surreply Brief" as is appropriate and authorized.

that the ALJ provided insufficient weight to Plaintiff's hearing testimony in applying the psychiatric review technique and in evaluating the credibility of his allegations of limiting symptoms.  The court will address each issue raised.

### A.   Bias

The Due Process Clause of the Fifth Amendment guarantees a hearing before a fair and impartial tribunal. See U.S. Const., amend. V; Harline v. Drug Enforcement Admin., 148 F.3d 1199, 1203 (10th Cir. 1998); Withrow v. Larkin, 421 U.S. 35, 46, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975).  This guarantee applies to administrative adjudications as well as those in the courts.  Id.  But, in order to disqualify an ALJ, or obtain a ruling that a hearing is unfair, "a substantial showing of personal bias is required."  Roberts v. Morton, 549 F.2d 158, 164 (10th Cir. 1976).  Moreover, an administrative law judge enjoys a presumption of honesty and integrity, Withrow, 421 U.S. at 47, 95 S.Ct. 1456, which is only rebutted by a showing of "some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." Mangels v. Pena, 789 F.2d 836, 838 (10th Cir. 1986).  Without such a showing, ALJ's are presumed to be persons "'of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances.'"  Withrow, 421 U.S. at 55, 95 S.Ct. 1456 (quoting United States v. Morgan, 313 U.S. 409, 421, 61 S.Ct. 999, 85 L.Ed. 1429 (1941)).

Here, Plaintiff makes the bare assertion that the ALJ's credibility findings and RFC assessment were made through the "biased lens of a predisposition of denial imagined and projected by DDS [(the state agency Disability Determination Service)] and re-articulated by the ALJ." (Pl. Br. 13). However, Plaintiff points to no evidence suggesting a substantial showing of personal bias, or to any substantial countervailing reason to conclude that the ALJ is biased with respect to the factual issues being adjudicated. The mere fact that Plaintiff disagrees with the findings reached by the ALJ is insufficient to show bias.

To be sure, the ALJ's findings with respect to the paragraph "B Criteria" of the mental listings were identical to the findings of the DDS psychologist in the initial determination. Compare (R. 366), with (R. 291). However, at the reconsideration determination, a different DDS psychologist found that Plaintiff's degree of limitation on the paragraph "B Criteria" was either "mild," or "none," and determined that Plaintiff's mental impairments were not severe. (R. 313, 323). Each of the DDS psychologists, and the ALJ explained the rationale for his findings regarding the "B Criteria," and none of the rationale displays obvious bias. (R. 293, 325, 364-69). As to mental RFC assessment, the DDS psychologist at the initial determination found moderate limitations only in the ability to interact appropriately with the general public, and he explained that "[t]he clmt would do better in jobs that require infrequent interaction with the general public." (R. 296, 297). The DDS psychologist at the reconsideration determination found the mental

impairments were not severe and did not provide a mental RFC assessment because, by definition, a "non-severe" impairment does not produce more than minimal work-related limitations.  (R. 313) ("These findings complete the medical portion of the disability determination.").  The ALJ stated that he agreed with the mental RFC of the DDS psychologist "at the initial determination" in reaching his own RFC assessment.  (R. 369) (citing Ex. 8F (R. 295-98)).  Like the DDS psychologist at the initial determination, the ALJ assessed moderate limitation in the ability to interact appropriately with the general public, and found that "the claimant would do better in jobs that require infrequent interaction with the general public."  (R. 367).  However, unlike the DDS psychologist, the ALJ also found that "the claimant has a ninth grade education and is unable to read or write except for simple words and is unable to do simple math."  Id.  The court sees no evidence in the record which would provide a substantial showing of bias, and finds that Plaintiff has not demonstrated bias as alleged.

## B.   Credibility

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990); Broadbent v. Harris, 698 F.2d 407, 413 (10th Cir. 1983).  "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence. Wilson, 602 F.3d at 1144; accord Hackett, 395 F.3d at 1173.  Therefore, in reviewing the ALJ's credibility determinations, the court will usually defer to the ALJ on matters

involving witness credibility.  <u>Glass v. Shalala</u>, 43 F.3d 1392, 1395 (10th Cir. 1994); <u>but see</u> <u>Thompson</u>, 987 F.2d at 1490 (10th Cir. 1993) ("deference is not an absolute rule").

Plaintiff must demonstrate error in the ALJ's rationale or finding, the mere fact that there is evidence which might support a contrary finding will not establish error in the ALJ's determination.  "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.  We may not displace the agency's choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo."  <u>Lax</u>, 489 F.3d at 1084 (citations, quotations, and bracket omitted); <u>see also</u>, <u>Consolo v. Fed. Maritime Comm'n</u>, 383 U.S. 607, 620 (1966). But, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings."  <u>Huston v. Bowen</u>, 838 F.2d 1125, 1133 (10th Cir. 1988).  Where the ALJ has reached a reasonable conclusion that is supported by substantial evidence, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Plaintiff makes no attempt to demonstrate the error in the ALJ's credibility determination. He does not identify the factors relied upon in the decision, or point to evidence which would negate their effect.  Rather, he summarizes certain of his own testimony at the hearing, and argues that an "objective examination" of that testimony demonstrates extreme limitations in daily living and in social functioning.  (Pl. Br. 13-14).

11

On the other hand, the court's review of the decision reveals fifteen reasons given by the ALJ to find Plaintiff's allegations not credible.  (1) Plaintiff's allegations are not supported by a review of the evidence.  (R. 368).  (2) Plaintiff alleged disability beginning July 3, 2007, but did not seek mental health treatment till later.  Id.  (3)  Dr. Wards's consultative examination in August 2007 revealed Plaintiff would be psychologically able to complete most work assignments.  Id.  (4) Global Assessment of Functioning scores assigned at COMCARE improved from 55 to 62, indicating only mild symptoms while generally functioning pretty well.  Id.  (5) Plaintiff reported learning disability since school, but had worked at substantial gainful levels when not incarcerated.  Id.  (6) Plaintiff told Dr. Ward that he quit his last job because they withheld wages to pay child support, but told staff at COMCARE that his last employer ran out of work, and let him go.  Id.  (7) Plaintiff reported he is unable to read, but obtained a driver's license.  Id.  (8) Plaintiff reported trouble counting change, but reported he does shopping for the family.  (9) Plaintiff's reports of limitations to the Social Security Administration differ from his reports to treating sources.  Id.  (10) At the hearing, Plaintiff reported hearing voices, but at his last COMCARE visit he denied auditory or visual hallucinations.  Id.  (11) Plaintiff reported differing dates regarding suicide attempts.  Id.  (12) Plaintiff reported differing dates regarding substance abuse.  (R. 369).  (13) Plaintiff reported working out, and the ability to care for himself, care for his pets, clean the house, and help his father.  (R. 369).  (14) No treating or examining source has suggested disability.

12

Id. (15) No medical source has validated the extreme limitations alleged at the hearing.
Id.

As the above summary suggests, the ALJ closely and affirmatively linked his credibility determination to substantial evidence.  Plaintiff's assertion that his testimony at the hearing demonstrates extreme limitations is merely an invitation to reweigh the evidence and substitute the court's judgment for that of the ALJ.  That is not within the court's province.  Plaintiff has shown no error in the credibility determination.

### C.      Application of the Psychiatric Review Technique

The Commissioner has promulgated a Psychiatric Review Technique for evaluating mental impairments. 20 C.F.R. §§ 404.1520a, 416.920a.  In evaluating the severity of mental impairments at steps two and three, the technique provides for rating the degree of functional limitation in each of four broad mental functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation.  Id. §§ 404.1520a(c) 416.920a(c).  These are the four mental functional areas referred to in the paragraph "B Criteria" of the mental disorder Listings. Id., Pt. 404, Subpt. P, App. 1, §§ 12.00 - 12.10.  After rating the degree of limitation in each functional area, the Commissioner determines the severity of plaintiff's mental impairments.  Id. §§ 404.1520a(d), 416.920a(d).

When the first three functional areas are rated as "none" or "mild," and the fourth area is rated as "none," the agency will conclude at step two of the sequential evaluation

process that plaintiff's mental impairments are not severe "unless the evidence otherwise indicates that there is more than a minimal limitation in [plaintiff's] ability to do basic work activities." Id. §§ 404.1520a(d)(1), 416.920a(d)(1).  If the mental impairments are severe, the technique requires a step three evaluation of whether the impairment meets or equals a listed impairment, by comparing the step two findings and the medical evidence with the criteria of the listings. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).  As relevant here, the paragraph "B Criteria" are met if Plaintiff's condition demonstrates at least two of the following:  (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration. Id. Pt. 404, Subpt. P, App. 1, §§ 12.00A, 12.04, 12.06, 12.08.  If the Commissioner determines that plaintiff's mental impairments do not meet or equal a listing, he will then assess plaintiff's RFC. Id. §§ 404.1520a(d)(3), 416.920a(d)(3).

    With regard to activities of daily living and social functioning, the ALJ made the following findings:

> In activities of daily living, the claimant has mild restriction.  The claimant resides with his father who has suffered a stroke.  He is able to care for himself, his father, the home and his pets.

> In social functioning, the claimant has moderate difficulties.  The available medical evidence indicates that the claimant would do better in jobs that require infrequent interaction with the general public.

14

(R. 366).  The ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or equals any of the Listed Impairments.  Id.  Therefore, he proceeded to assess Plaintiff's RFC.  (R.367-69).

In that assessment, he summarized the remainder of the evidence, including Plaintiff's allegations of symptoms and the medical opinions, found that Plaintiff's allegations are not credible, and stated his agreement with the medical opinions of the DDS medical sources at the initial determination.  (R. 367-69).  Based upon that consideration, he assessed Plaintiff with the following RFC:

> to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant has a ninth grade education and is unable to read or write except for simple words and is unable to do simple math.  He has moderate limitation in the ability to interact appropriately with the general public.  These limitations include the ability to adapt to most work situations with the ability to understand and remember simple and complex instructions, the ability to focus, persist, and concentrate for extended periods of time with the notation that the claimant would do better in jobs that require infrequent interaction with the general public.

(R. 367) (bolding omitted).

Once again, in his argument with regard to application of the psychiatric review technique, Plaintiff points to his own testimony at the hearing and asserts that the ALJ undervalued the "B Criteria" limitations, and did not reflect the appropriate extreme limitations in daily activities and social functioning in his RFC assessment.  Having failed to show error in the credibility finding, Plaintiff cannot rely solely on his own testimony

as the basis to find error in the RFC assessment.  The ALJ found that testimony not credible, and as discussed above Plaintiff has shown no error in that determination.

Plaintiff's objection to the Commissioner's use of <u>Bean</u> is not helpful.  Plaintiff is correct that such daily activities as those considered in <u>Bean</u> may be considered in evaluating credibility, and that mere participation in such activities does not establish that a claimant is not disabled.  However, the ALJ here did not rely upon those daily activities alone to establish that Plaintiff is not disabled, and he did not find that the ability to perform such activities suggests Plaintiff is able to work full time.  Rather, he relied upon those activities along with fourteen other factors to determine that Plaintiff's allegation of symptoms is not credible.  Thereafter, he relied upon all of the record evidence to assess Plaintiff's RFC, and determined, based upon that RFC, that Plaintiff was able to perform his past relevant work.  (R. 367-69).  Then, alternatively, he considered Plaintiff's age, education, work experience, and the RFC assessed, and determined that there are a significant number of jobs in the economy that Plaintiff can perform.[2]  (R. 369-70).  This is not error, and Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

---

[2]As Plaintiff asserts, the ALJ found a 75% reduction in the occupational base, but in accordance with the vocational expert testimony, he found that the remaining 25% of the occupational base included significant numbers of jobs Plaintiff could perform.  (R. 369).

Dated this 15th day of March 2012, at Kansas City, Kansas.


s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**